Filed 7/17/25  P. v. Rodriguez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MARCUS RODRIGUEZ,<br><br>  Defendant and Appellant. | D084529<br><br><br><br>(Super. Ct. No. SCE409932) |

APPEAL from a judgment of the Superior Court of San Diego County, Selena D. Epley, Judge.  Affirmed.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Marcus Rodriguez, appeals from a judgment after a jury conviction for assault with a deadly weapon. (Pen. Code, § 245, subd. (b).)[1] Rodriguez argues there is insufficient evidence to support the conviction because the evidence at trial did not establish an attempt to commit a battery. We disagree and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *September 2021 Incident*

L.T. lived with her boyfriend A.M., who was also the property manager of their apartment building. In 2021, Rodriguez moved into an apartment on the opposite side of the hall a few doors down from L.T. and A.M. In September, A.M. reported a disturbance in the building between Rodriguez and Rodriguez's girlfriend, Marissa C., which A.M. attempted to break up.

Later in the same month, a Ring camera outside L.T.'s and A.M.'s apartment was ripped off their door. L.T. suspected Rodriguez was responsible. On the same day L.T. remounted the camera, she noticed it activated when Marissa walked by the apartment. Later that day, L.T. looked through her front door's peephole and observed Rodriguez acting suspiciously, standing with his body pressed against the wall looking toward her apartment. L.T. stepped partially out into the hall and asked what Rodriguez was doing.

Rodriguez told L.T. to "get [her] ass back in the house." L.T. and Rodriguez went back and forth yelling at each other. Rodriguez eventually stated that "some Lincoln girls" were going to attack L.T. L.T. understood "Lincoln girls" to refer to possible gang members. Rodriguez then lifted his shirt to reveal a firearm tucked into his waistband. L.T. asked why Rodriguez was pointing a gun at her. Rodriguez responded by removing the

---

[1] All further statutory references are to the Penal Code.

gun from his waistband, moving forward and pointing the gun directly at L.T.'s face, responding, "Now I'm pointing the gun at you."

L.T. later described the gun as having a dual tone with a black grip and silver "top." L.T. was fearful because she knew what firearms were capable of and had witnessed previous conflicts with Rodriguez. L.T. stated that Rodriguez had his "finger on the trigger[,]" ready to fire the gun.

L.T. again asked Rodriguez why he was pointing a gun at her. She told him she would report the incident to the police. Rodriguez briefly returned to his apartment, reemerging a short time later without the gun but with a cell phone. When Rodriguez returned, he began recording and remarking that he was Mexican. L.T. understood Rodriguez's remarks to indicate the police would find Rodriguez more credible than her, because L.T. is a Black woman.

Another building tenant, R.M., who lived next door to L.T. and A.M., testified that he overheard a loud verbal exchange. He recognized the voices as L.T.'s and Rodriguez's. R.M. stood in his doorway for five minutes observing the exchange. During this time, R.M. did not observe anything in Rodriguez's hands. L.T. did not see anyone besides Rodriguez in the hallway.

After L.T. returned to her apartment, she called A.M. and 911. A.M. left work and arrived home before the arrival of San Diego County Sheriff's Deputy Dominic Russo. L.T. was visibly scared and asked for a restraining order. L.T. stated that Rodriguez said he was "going to beat [her] ass" if she did not go back inside her apartment. A.M. showed Deputy Russo several text messages from Rodriguez. In the texts, Rodriguez threatened to sue A.M. and to inform A.M.'s boss that A.M. smoked marijuana. A.M. also received similar text messages from an unknown number. Deputy Russo instructed A.M. not to respond to the text messages.

B.    *October Search Warrant*

Eleven days later, the sheriff's department executed a search warrant on Rodriguez's apartment. The team discovered a Smith and Wesson .40-caliber firearm with a silver top slide and a black handle in the bedroom closet. The firearm did not have a round in the chamber, but it did have a loaded magazine inserted. At trial, L.T. identified a photograph of the gun found in Rodriguez's apartment as the gun pointed at her.

C.    *Verdicts and Sentencing*

Rodriguez was convicted of making criminal threats (§ 422; count one), assault with a semi-automatic firearm (§ 245, subd. (b); count two), drawing or exhibiting a firearm (§ 417, subd. (a)(2); count three), possession of a firearm while under a restraining order (§ 29825, subd. (b); counts four and six), and disobeying a court order (§ 166, subd. (a)(4); counts five and seven). The jury also found true two enhancements — being armed with a firearm (§ 12022, subd. (a)(1)) and personal use of a firearm (§ 12022.5, subd. (a)).

The trial court imposed a three-year term for count two and a consecutive three-year term for the personal use of firearm enhancement. It ordered a two-year term for count one, to be served concurrently. The remaining five counts were misdemeanors for which the court imposed a sentence of credit for time served. The total sentence was six years.

DISCUSSION

Rodriguez argues there was insufficient evidence to convict him of assault with a firearm because the crime of assault requires proof that his conduct would have directly resulted in a battery. Rodriguez suggests the prosecution failed to prove this element because further evidence of intent is necessary, such as squeezing the trigger or trying to strike someone with the firearm. Finally, for the first time in his reply brief, Rodriguez contends the

4

prosecution failed to prove a battery would immediately follow his actions because there was insufficient evidence to show the firearm was loaded during the incident.  We reject these contentions.

A.    *Governing Law*

1. Standard of Review

In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves.  Rather, we examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1117–1118.)  If the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.  We do not reweigh evidence or reevaluate a witness's credibility.  (*Id.* at p. 1118.)

2. Substantive Law

Assault is, as defined by section 240, "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." "[T]he crime of assault has always focused on the nature of the act and not on the perpetrator's specific intent.  An assault occurs whenever ' "the next movement would, *at least to all appearance*, complete the battery." ' " (*People v. Williams* (2001) 26 Cal.4th 779, 786 (*Williams*).)  "As a result, a specific intent to injure is not an element of assault because the assaultive act, by its nature, subsumes such an intent." (*Ibid.*)  The mental state is established by proof that the defendant willfully committed an act that by its nature will

5

probably and directly result in injury to another, i.e., a battery. (*Id.* at p. 787.)

Pointing a gun at someone in a menacing manner or under threatening circumstances is enough to establish the requisite mental state for an assault. (*People v. Cruz-Partida* (2022) 79 Cal.App.5th 197, 207–210 (*Cruz-Partida*).) Such conduct "is sufficient to provide the mens rea for an assault charge where there is animus between the defendant and the targeted party and/or the surrounding circumstances are fraught." (*Id.* at p. 210.)

At the same time, "[a] long line of California decisions hold[] that an assault is not committed by a person's merely pointing an (unloaded) gun in a threatening manner . . . ." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, fn. 3.) Pointing an unloaded firearm in a threatening manner can satisfy the required mental state for assault pertaining to "an unlawful attempt" but will not alone satisfy the "present ability" element. (*People v. Sylva* (1904) 143 Cal. 62, 64; *People v. Hartsch* (2010) 49 Cal.4th 472, 507–508.) But direct evidence is not necessary to prove the gun was loaded; instead "the fact that the gun was loaded may be inferred from circumstantial evidence, and we will uphold an assault conviction if the inference is reasonable." (*People v. Penunuri* (2018) 5 Cal.5th 126, 147 (*Penunuri*).)

B.     *Analysis*

For the first time in his reply brief, Rodriguez argues that additional evidence must show the firearm was loaded to prove Rodriguez had the "present ability" to complete a battery. We do not consider arguments made for the first time in a reply brief, because such arguments deprive the respondent of an opportunity to brief them. (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.) In his opening brief, Rodriguez did not argue insufficient evidence of the "present ability" element or contest that

the gun was loaded. Even if the issue were not forfeited, however, we would find that the jury could have made a reasonable inference that the gun was loaded. (*Penunuri, supra*, 5 Cal.5th at p. 147.) Police discovered the firearm stored in Rodriguez's closet with a loaded magazine inserted. The jury could reasonably infer that if Rodriguez kept the firearm loaded while storing it in his closet, it would also have been loaded when he carried it on his person and then pointed it at someone threateningly. It would be unusual to load a gun only for storage purposes.

Rodriguez separately contends there is insufficient evidence to demonstrate pointing the gun at L.T. would directly result in a battery. Rodriguez does not contest there is sufficient evidence that he pointed the gun at L.T. Nor does he contest the evidence he did so after yelling at L.T. that "some Lincoln girls," understood to be gang members, were going to attack her. Yelling at L.T. and threatening her created a violent atmosphere, which Rodriguez escalated by lifting his shirt to display his firearm. Rodriguez further intensified the menacing atmosphere by drawing the weapon while moving closer to L.T. Then, the situation reached a climax when Rodriguez pointed the gun at L.T.'s face while he had his "finger on the trigger[,]" indicating, by all appearances, that his "next movement" would be firing the weapon. (*Williams, supra*, 26 Cal.4th at p. 786.) There was also evidence of animus between the parties. Based on the totality of circumstances, Rodriguez's threatening conduct in pointing a loaded gun at L.T. in a menacing manner was sufficient to establish an assault. (*Cruz Partida, supra*, 79 Cal.App.5th at pp. 207–210.) Accordingly, there was sufficient evidence Rodriguez assaulted L.T. with a firearm.

7

## DISPOSITION

The judgment is affirmed.


                                                            BUCHANAN, J.


WE CONCUR:


McCONNELL, P. J.


DATO, J.

8